E. R. REID et al., Plaintiffs-Appellants,

v.

McDONNELL DOUGLAS CORPORA-
TION and International Union, United
Automobile Aerospace and Agricultural
Implement Workers of America
(UAW–AFL–CIO) District Lodge 1093,
Defendants-Appellees.

No. 417–70.

United States Court of Appeals,
Tenth Circuit.

June 8, 1971.

Jonathan C. Gibson, San Diego, Cal.
(Welsh, Gibson & Legro, San Diego,
Cal., John L. Kilcullen, Gall, Lane, Pow-
ell & Kilcullen, Washington, D. C., E.
John Eagleton, Kothe & Eagleton, Inc.,
Tulsa, Okl., on the brief), for plaintiffs-
appellants.

Richard W. Gable, Tulsa, Okl. (Gable,
Gotwals, Hays, Rubin & Fox, Tulsa, Okl.,
on the brief), for defendant-appellee
McDonnell Douglas Corp.

Stephen I. Schlossberg, Gen. Counsel, Detroit, Mich. (Joseph L. Rauh, Jr., John Silard, Washington, D. C., on the brief; McMath, Leatherman, Woods & Youngdahl, Little Rock, Ark., Ungerman, Grabel, Ungerman & Leiter, Tulsa, Okl., of counsel), for defendant-appellee International Union (UAW).

Before LEWIS, Chief Judge, and PICKETT and ADAMS*, Circuit Judges.

ADAMS, Circuit Judge.

This case presents a difficult question concerning the jurisdiction of the federal courts to hear a dispute regarding whether a union may spend dues for political purposes over the objection of non-union members compelled to pay such dues pursuant to an agency shop agreement between their employer and the union.

Plaintiffs purport to represent a class of employees of McDonnell Douglas Corporation who are not members of the United Auto Workers (UAW) but who are required to pay dues as a condition of employment under an agency shop clause in the contract between the UAW and McDonnell Douglas.[1]

In a complaint filed in the United States District Court for the Northern District of Oklahoma in 1967, plaintiffs allege that the UAW spends a portion of the plaintiffs' dues for political candidates and causes which are opposed by the plaintiff-employees. However, these employees do not allege that they protested such expenditures, or that they have demanded a pro rata refund or reduction in their dues. The alleged injury is the imposition on such employees of political and ideological conformity in violation of the first, fifth, ninth and fourteenth amendments to the Constitution, the UAW's duty of fair representation, a duty implied under § 9(a) of the National Labor Relations Act[2] ("the Act") and of an implied condition in the collective bargaining agreement.[3] Jurisdiction is alleged under 28 U.S.C. § 1331(a) and 29 U.S.C. § 185 (§ 301 of the Labor-Management Relations Act).[4] The complaint requested a declaratory judgment, monetary damages and injunctive relief. Upon defendants' separate motions to dismiss, District Judge Allen E. Barrow dismissed the action against the UAW on the ground that the preemption doctrine created exclusive jurisdiction to hear the matter in the National Labor Relations Board and dismissed the claim against McDonnell Douglas on the ground that the complaint failed to state a claim against McDonnell Douglas for which relief may be granted.

The plaintiff-employees here recognize that the Supreme Court in San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), held that whenever a party challenges union activity arguably protected by § 7 or prohibited by § 8 of the Act, the doctrine of primary jurisdiction requires "federal courts [to] defer to the exclusive competence" of the NLRB. *Id.* at 245, 79 S.Ct. at 780. Plaintiffs contend, however, that their claim comes within one of the several exceptions to primary jurisdiction.

██ The first exception invoked by the plaintiffs regards their claim that

---

* Of the Third Circuit, sitting by designation.

1. *See generally* The Agency Shop, Federal Law, and the Right to Work States, 71 Yale L.J. 330 (1961).

2. 29 U.S.C. § 159(a); *see* Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953).

3. This claim is not explicitly made in the complaint, but for purposes of this appeal we will treat it as properly raised.

4. Plaintiffs later sought to amend their complaint to allege jurisdiction also under 28 U.S.C. § 1337. The District Court refused to allow such amendment because it was proposed, with several other amendments, immediately before the Court was to announce its decision on the complaint as filed, and the case had already been fully briefed by the parties on a different basis.

"[t]he exaction of compulsory agency fee payments * * * abridges rights guaranteed to them under the First [and] Fifth Amendments * * * of the United States Constitution." Plaintiffs assert this claim is sufficient to bring them within the "arising under" jurisdiction of 28 U.S.C. § 1331(a).[5] By their terms, the first and fifth amendments proscribe federal governmental action, not the actions of private persons. In International Association of Machinists v. Street, 367 U.S. 740, 81 S. Ct. 1784, 6 L.Ed.2d 1141 (1961), the Supreme Court met this issue by relying on its analysis in Railway Employees Department v. Hanson, 351 U.S. 225, 231–232, 76 S.Ct. 714, 100 L.Ed. 1112 (1956). In Hanson, Justice Douglas reasoned that the Railway Labor Act expressly superseded state laws prohibiting the union shop. Accordingly, contracts negotiated with a union shop provision necessarily carry the "imprimatur of the federal law", the element which provides the required governmental action. Indeed one may argue further that the union shop is a device which Congress had decided to encourage in the railway industry by nullifying any state laws to the contrary. Union activity pursuant to such encouragement is thus within the traditional ambit of "state action" analysis under the fourteenth amendment[6]—a concept bearing close analogy to the federal governmental action required to invoke the first and fifth amendments. Whatever the wisdom of this reasoning for the Railway Labor Act, it has no applicability to the National Labor Relations Act. For in Retail Clerks International Association, Local 1625, A.F.L.–C.I.O. v. Schermerhorn, 373 U.S. 746, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963), the Court held that the agency shop, authorized by §§ 7 and 8(a) (3) of the Act, is limited by § 14(b) of the Act, thus permitting the states to forbid it. Unlike the union shop in Hanson and Allen, the agreement here could be "made illegal [or] vitiated by * * * the laws of a State." Hanson, supra, 351 U.S. at 232, 76 S.Ct. at 718. While the union shop provision in the Railway Labor Act is not compulsory in the sense that management and labor are not required to establish such a shop, the provision does give management and labor the right to bargain for a union shop and mandates that states not interfere with that right. This mandate is part of a most comprehensive regulatory scheme whose entire history has been one of very active governmental supervision and treatment. See Street, supra, 367 U.S. at 750–764, 81 S.Ct. 1784. Moreover, the rail unions have been given extremely broad responsibilities for their union members beyond anything permitted or mandated under the National Labor Relations Act.[7] See e. g., 45 U.S.C. §§ 152, 156.

By contrast, the policy with respect to union security agreements expressed in the NLRA is more neutral and permissive than the policy of the RLA. See the analysis of governmental action in Reitman v. Mulkey, 387 U.S. 369, 373–381, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); cf. Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). In NLRA matters, the federal government does not appear to us to have so far insinuated itself into the decision of a union and employer to agree to a union security clause so as to make that choice governmental action for purposes of the

---

5. "The district court shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum of $10,000 * * * and arises under the Constitution, laws, or treaties of the United States."

6. Cf. Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). This

analysis and its criticism is suggested by H. H. Wellington in Labor and the Legal Process, 242–252 (1968).

7. Such omnibus control over workers in an enterprise might be analogized to the company town in Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946); see Wellington, supra, n. 5 at 244.

first and fifth amendments.[8] In Seay v. McDonnell Douglas Corp., 427 F.2d 996 (9th Cir. 1970), the Ninth Circuit relied on *Hanson* and *Street* as demonstrating the existence in the federal courts of jurisdiction to hear the type of constitutional claim raised here. However, the *Seay* court did not consider the question of governmental action, and for the reasons stated above, we cannot agree that the rationale of the Railway Labor Act cases applies to the present controversy.[9]

Plaintiffs alleged in their brief on appeal that the NLRA is unconstitutional if its effect is to allow the UAW to spend the plaintiffs' dues on political purposes opposed by them. However, the plaintiff's complaint nowhere attacks the constitutionality of the Act on this or any other basis. If such an attack were made, it might well be insubstantial in light of National Labor Relations Board v. General Motors Corp., 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963), which held the agency shop to be valid, and International Association of Machinists v. Street, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961), which held the RLA does *not* permit political expenditures by unions contrary to the philosophy of their members. Although the Supreme Court has not examined the NLRA in the context of the constitutionality of union political expenditures, it may be contended that the

Court's reasoning in *Street* is applicable by analogy.[10]

Plaintiffs next claim that the UAW has breached its duty of fair representation, thereby invoking the doctrine of Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), to establish jurisdiction in the federal courts. As the exclusive bargaining representative for the employees here, the UAW does have the statutory duty to represent fairly all employees within the unit. Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). Plaintiffs' claim on this theory is couched in terms of a breach of the UAW's "fiduciary duty * * * to use [the plaintiffs' dues] for purposes reasonably necessary and germane to collective bargaining only" and that expenditures for political "doctrines and candidates" opposed by plaintiffs constitutes a violation of that fiduciary duty.[11] A related jurisdictional claim of plaintiffs depends on finding a similar implied duty of fair representation in the collective bargaining agreement, thereby making possible a suit under § 301 of the Labor Management Relations Act.[12] Again, the Ninth Circuit suggests that such an allegation is sufficient to invoke federal court jurisdiction. *Seay, supra,* 427 F.2d at 1000–1001. Plaintiffs have cited no other cases where a union was held to violate its duty of fair represen-

8. We note that the examination of "governmental action" may be more searching when racial discrimination is at issue. See Black, Forward: "State Action", Equal Protection, and California's Proposition 14, 81 Harv.L.Rev. 69, 70–71 (1967).

9. It is of interest that racial discrimination by railway unions against their members was early found violative of an implied duty in the RLA rather than the Constitution. See *e. g.,* Steele v. Louisville & Nashville R.R., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944); Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); but see Mr. Justice Murphy's concurrence in *Steele, supra.*

10. But compare Wellington, *supra,* n. 5 at 263–264.

11. *Cf.* International Association of Machinists v. Street, *supra,* 367 U.S. at 764, 81 S.Ct. at 1797: " * * * § 2, Eleventh [of the RLA] contemplated compulsory unionism to force employees to share the costs of negotiating and administering collective agreements, and the costs of the adjustment and settlement of disputes."

12. 29 U.S.C. § 185(a): "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties. * * * " See Vaca v. Sipes, *supra,* 386 U.S. at 183–184, 87 S.Ct. 903.

tation by its actions regarding an employee with respect to internal union matters as contrasted with its actions vis-a-vis the employer. In cases such as Brady v. Trans World Airlines, Inc., 401 F.2d 87 (3rd Cir. 1968), and Cunningham v. Erie R. Co., 266 F.2d 411 (2d Cir. 1959), both cited by appellants, the employee had been dismissed by the employer upon the union's complaint for failure to pay dues. Yet, the plaintiffs here do allege that the UAW will cause McDonnell Douglas to discharge them if they do not pay the contractually required agency fees. Such allegation appears sufficient as a basis for denying a motion to dismiss a complaint seeking the declaratory judgment relief requested by the employees. On the present state of the record, we can do no more than conclude that jurisdiction of the District Court conceivably does exist under these theories to hear the claim of the employees against the union.[13]

In the District Court, the UAW raised the defense of failure of the plaintiffs to exhaust either the available internal union remedies[14] or the grievance procedures established under the contract.[15] However, we cannot make any judgment with respect to this issue since it involves factual questions which the District Court has not resolved. In addition, the UAW suggested in the District Court that the case may be moot because the union has adopted internal machinery whereby dissident members or persons compelled to pay agency fees may secure a pro rata refund of dues spent

for political purposes with which they disagree. This issue also presents controverted questions of fact—for example, whether plaintiffs, as non-union members, are entitled to use the UAW's claim procedures to secure rebates—which we cannot resolve on this appeal. In addition, there is a question whether the text of the UAW's refund provision in its constitution is properly before this Court since the provision was merely attached to UAW's suggestion to the District Court to dismiss the action as moot.

■ The District Court dismissed the complaint against McDonnell Douglas for failure to state a claim for which relief may be granted. Plaintiffs allege McDonnell Douglas will fire them if they fail to pay the agency fees.[16] McDonnell Douglas replies that the Supreme Court has made clear in International Association of Machinists v. Street, 367 U.S. 740, 81 S.Ct. 1784, 6 L. Ed.2d 1141 (1961) and Brotherhood of Railway and S. S. Clerks, etc. v. Allen, 373 U.S. 113, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963) that the possible violation of employees' rights is caused by the expenditure by the union, not the collection by the company, of dues paid under union security agreements. In *Street* the Court stated:

> " * * * the union-shop agreement itself is not unlawful * * * The appellees therefore remain obliged, as a condition of continued employment, to make the payments to their respec-

---

13. We do not mean to intimate that the plaintiffs have asserted a meritorious claim but only that enough has been alleged to support a decision that jurisdiction exists. Among other requirements, the plaintiffs must show the "union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith" in order to establish a breach of the duty of fair representation. Vaca v. Sipes, *supra*, 386 U.S. at 190, 87 S.Ct. at 916.

14. See *e. g.*, Foy v. Norfolk & Western Ry., 377 F.2d 243, 246 (4th Cir. 1967);

Brady v. Trans World Airlines, Inc., 401 F.2d 87, 104 (3rd Cir. 1968).

15. See Vaca v. Sipes, *supra*, 386 U.S. at 184, 87 S.Ct. 903; Federal Protection of Individual Rights under Labor Contracts, 73 Yale L.J. 1215, 1226–1232 (1964).

16. Plaintiffs' specific allegation is that they "have been advised by responsible representatives of McDonnell Douglas and UAW that should they fail or refuse to pay said monthly agency fee to the UAW their employment will be terminated."

tive unions called for by the agreement * * * [A]ppellees' grievance stems from the spending of their funds for purposes not authorized by the Act in the face of their objection, not from the enforcement of the union-shop agreement by the mere collection of funds. * * * We think that an injunction restraining enforcement of the union-shop agreement is therefore plainly not a remedy appropriate to the violation of the Act's restrictions on expenditures." 367 U.S. at 771, 81 S.Ct. at 1801.

But in *Allen,* while reiterating the above language, the Court expanded the appropriate remedies available to the dissenters to include not only an injunction against the union prohibiting the expenditure for objectionable purposes of that pro rata portion of total union political expense as is derived from dissenting employees, or a pro rata refund from the union of funds spent for objectionable purposes, but also "a reduction of future such exactions [from dissenting employees] by the same proportion." 373 U.S. at 122, 83 S.Ct. at 1164. Although it is conceivable that the effectuation of the last alternative might require some injunctive relief against McDonnell Douglas, this possibility appears to be too remote to justify the reversal of the dismissal against McDonnell Douglas. The gravamen of the employees' complaint pertains to the conduct of UAW. Although an employer may sometimes be required to look behind the union's claim that an employee has failed to tender the requisite dues, Brady v. Trans World Airlines, Inc., 401 F.2d 87, 99–101 (3rd Cir. 1968); James v. Marinship Corp., 25 Cal.2d 721, 155 P.2d 329 (1944), such situation is not contemplated by the complaint as it now stands.

Accordingly, the judgment of the District Court will be reversed as to the dismissal of UAW and affirmed as to the dismissal of McDonnell Douglas, in conformity with this opinion.