**R. Lance LOHR et al.**

v.

**ASSOCIATION OF CATHOLIC TEACHERS, LOCAL 1776, et al.**

**Civ. A. No. 75–1910.**

United States District Court, E. D. Pennsylvania.

July 12, 1976.

Hugh L. Reilly, National Right to Work Legal Defense Foundation, Inc., Fairfax, Va., for plaintiffs.

Herbert G. Keene, Jr., Philadelphia, Pa., for Archdiocese of Philadelphia Secondary School System and Thomas P. Forkin.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

Presently before the Court is the motion of defendants Archdiocese of Philadelphia Secondary School System (Archdiocese) and Thomas P. Forkin, Assistant Superintendent of Schools for the Archdiocese, to dismiss Count V of the complaint for failure to state a claim upon which relief can be granted. For the purpose of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the material allegations of the complaint are taken as admitted, and the complaint should not be dismissed unless it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Applying this standard to the present case, the defendants' motion is granted for the reasons discussed below.

Plaintiffs are eight lay high school teachers employed by the Archdiocese who are not members of the Association of Catholic Teachers, Local 1776 (ACT), the exclusive bargaining representative of lay teachers working for the Archdiocese. Their sole claim[1] against defendants Archdiocese and Forkin is that these defendants conspired with ACT and other labor organizations[2] to

---

1. Besides this claim against the Archdiocese and its representative, the complaint contains four other claims for relief against ACT and other labor organizations. These claims are for breach of trust, breach of the duty of fair representation, violation of Title 18 U.S.C. § 610, and breach of implied conditions of contract and statute.

2. Besides ACT, the following labor organiza-

interfere with plaintiffs' civil rights in violation of Title 42 U.S.C. §§ 1985(3)[3] and 1986.

In *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court discussed the elements a party must prove in order to establish a claim pursuant to § 1985(3). A key requirement that must be alleged in the complaint is that the defendants conspired with an "invidiously discriminating motivation" to deprive plaintiffs of equal protection, or equal privileges and immunities. The requisite invidious intent was further explained to mean "that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." 403 U.S. at 102, 91 S.Ct. at 1798. In this case, the complaint lacks adequate allegations demonstrating that the Archdiocese and its representative, Thomas P. Forkin, were participants in such an impermissible civil conspiracy.

The sufficiency of allegations attempting to frame a conspiracy under the civil rights statutes is determined by examining:

> whether or not the [complaint] sets forth with certainty facts showing particularly what a defendant or defendants did to carry the conspiracy into effect, whether such acts fit within the framework of the conspiracy alleged, and whether such acts, in the ordinary course of events, would proximately cause injury to the plaintiffs.

*Hoffman v. Halden*, 268 F.2d 280, 295 (9th Cir. 1959); *see also Powell v. Workmen's Comp. Bd. of N. Y.*, 327 F.2d 131 (2d Cir. 1964); *Reichardt v. Payne*, 396 F.Supp. 1010 (N.D.Cal.1975).

Plaintiffs' conspiracy allegations focus on the relationship between their employer, the Archdiocese, and ACT. Under the collective bargaining agreement negotiated between this union and employer, the plaintiffs, as a condition of their employment, must pay to ACT annual agency service fees in lieu of union membership dues. Plaintiffs allege that these compulsory service fees are expended by ACT for impermissible purposes. Rather than being used solely to cover the expense of grievance procedures and of collective bargaining with the Archdiocese, it is asserted that the fees are disbursed for illegal activities including, *inter alia*, lobbying, political campaign contributions, salaries to union officials, and benefits to union members such as insurance and medical plans, scholarship funds, and social and recreational functions. Plaintiffs protested to both ACT and the Archdiocese about these expenditures prior to filing their complaint which alleges a conspiracy by the Archdiocese and ACT for the purpose of using the collected funds for illegal objectives. Thus, they allege that the illegitimate disbursements violate their constitutional rights of freedom of speech and assembly, of equal protection of the laws, of due process, and of their privileges and immunities of citizenship in contravention of Title 42 U.S.C. § 1985(3).

In the complaint, the plaintiffs state that the Archdiocese and Thomas P. Forkin were members of the alleged conspiracy because they negotiated, entered into and enforced a collective bargaining agreement which contains a term requiring, as a condition of employment, that non-union members submit annual agency fees to ACT.[4] Such allegations alone are insufficient to tie these defendants to a conspiracy to illegally

---

tions are defendants: American Federation of Teachers; American Federation of Teachers, Committee on Political Education; Pennsylvania Federation of Teachers; American Federation of Labor-Congress of Industrial Organizations (AFL–CIO); AFL–CIO, Committee on Political Education; AFL–CIO, Pennsylvania State Central Body.

**3.** Title 42 U.S.C. § 1985(3) stated in pertinent part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

**4.** Complaint, ¶¶ 38–42.

disburse the collected funds because such a collective bargaining contract term is proper and valid. *See, N.L.R.B. v. General Motors Corp.*, 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963); *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963). As Justice Brennan stated in *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 771, 81 S.Ct. 1784, 1801, 6 L.Ed.2d 1141 (1961), about an analogous agency shop agreement:

> . . . the union shop agreement itself is not unlawful . . . The appellees therefore remain "obliged, as a condition of continued employment, to make the payments to their respective unions called for by the agreement . . . [A]ppellees' grievance stems from the spending of their funds for purposes not authorized by the Act in the face of their objection, not from the enforcement of the union-shop agreement by the mere collection of funds.

As this language indicates, and as plaintiffs themselves admit,[5] the *gravamen* of the instant complaint is the unlawful use of the agency fees by the union, not the tangential collection and transfer activity of the Archdiocese. The control of the collected funds rests solely with ACT, and the manner in which the monies are expended is an exclusively internal union matter.[6]

The only conspiracy allegation in the complaint relating the Archdiocese and Thomas P. Forkin to the asserted unlawful expenditures by ACT is that they had knowledge of the illegal activity yet continued to enforce the fee collection term of the collective bargaining contract.[7] Such knowledge is not, however, a sufficient basis to state a claim that these defendants were members of a conspiracy proscribed by Title 42 U.S.C. § 1985(3). In *Byrd v. Local Union No. 24, Int'l Bd. of Electrical Workers*, 375 F.Supp. 545, 563–64 (D.C., 1974), Judge Miller ruled in an analogous situation that certain trustees of union health and welfare funds were not members of an alleged conspiracy by various building trades to discriminate against blacks:

> . . . the allegation that the trustees conspired with others is limited by the allegation that they administered health and welfare benefit trust programs which benefited qualified whites more than the programs benefited qualified blacks as a result of the alleged discriminatory acts of the respective unions in denying employment opportunities to blacks. The mere acts of administering otherwise nondiscriminatory health and welfare funds, however, do not themselves make the trustees members of the respective alleged conspiracies in the respective challenged trades. In order for the trustees to be members of the respective conspiracies in the respective trades, they must have agreed, expressly or impliedly, with one or more other entities to inflict a wrong or injury upon another. The mere knowledge that the respective unions were unlawfully discriminating against blacks in providing employment opportunities does not make the respective trustees members of the alleged conspiracies in the respective trades. Nor does the mere act of administering health and welfare programs, which were not *per se* discriminatory, with such knowledge, make the trustees members of the alleged conspiracies.

---

5. In paragraph 20 of the complaint, the plaintiffs state that agency service fees may legally be charged to cover the cost of collective bargaining and grievance procedures carried out on their behalf.

6. The collective bargaining agreement entered into by the Archdiocese and ACT does not authorize impermissible disbursements; on the contrary, it reads as follows:

> All teachers share in the contract benefits and [ACT] representation. Those teachers who do not wish to join [ACT] shall tender a service fee pro-rated in amount to dues deducted from their salaries by the [Archdiocese]. This service fee, while not implying any prejudices toward [ACT], represents these teachers' share of the cost of ACT's efforts on their behalf. Article II, Check-Off.

Furthermore, the Archdiocese only deducts agency service fees (or union dues) from those teachers who specifically authorize such deductions in writing.

7. Complaint, ¶¶ 39, 42.

In this case, the collective bargaining agreement is not *per se* illegal, and the allegation that the Archdiocese knew that the union impermissibly used the agency fees paid by the plaintiffs and therefore forced plaintiffs to pay more for statutory activities than do ACT members, is not sufficient to state a claim that either the Archdiocese or its representative is a member of an unlawful civil conspiracy. *See also, Davis v. Sprouse*, 405 F.Supp. 45, 47 (E.D.Va.1975).

This conclusion is supported by *Reid v. McDonnell Douglas Corp.*, 443 F.2d 408 (10th Cir. 1971), which affirmed the dismissal of a complaint for failure to state a claim brought by non-union employees against their employer in a factual situation closely analogous to the instant dispute. These employees, pursuant to a collective bargaining agreement, were required to pay dues to the union which were allegedly used for impermissible purposes. Judge Adams, sitting by designation, stated that "the possible violation of employees' rights is caused by the expenditure by the union, not the collection by the company, of dues paid under union security agreements." 443 F.2d at 412. Although *Reid* did not involve a claim pursuant to Title 42 U.S.C. § 1985(3), its reasoning is applicable to this case, and plaintiffs novel pleading of a civil rights conspiracy does not succeed in stating a claim against the Archdiocese or Thomas P. Forkin.[8]

Plaintiffs' claim against these defendants pursuant to Title 42 U.S.C. § 1986[9] is a derivative claim since this statute provides a remedy only for injuries resulting from a conspiracy prohibited by § 1985(3). *Johnston v. National Broadcasting Co., Inc.*, 356 F.Supp. 904 (E.D.N.Y.1973). A party is subject to liability under § 1986 only if he has "power to prevent or aid in preventing the commission of the [wrongs conspired to be done in violation of § 1985(3)] neglects or refuses so to do . . ." In this case, as discussed above, the Archdiocese had no control over or power to prevent the alleged impermissible expenditure of the lawfully collected agency service fees. Such expenditure is an exclusively internal union determination. *See Int'l Assn. of Machinists v. Street, supra; Reid v. McDonnell Douglas Corp., supra.* Thus, this is not the type of situation where Title 42 U.S.C. § 1986 offers relief.

The motion of defendants Archdiocese and Forkin to dismiss the civil rights claims asserted against them is granted.

---

8. As the complaint lacks adequate conspiracy allegations, the Court need not consider the other issues raised by the defendants in support of their motion.

9. Title 42 U.S.C. § 1986 states in pertinent part: Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured . . . for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . .