Stephen R. HAVAS, Sue Havas, George Albeck, Stanley Borek, Melvin J. Brink, William H. Cator, Kenneth L. Collins, Donald R. Drake, Elizabeth Emrich, William F. Foote, Edward S. Fulmer, Jr., David P. Gibson, Theodore F. Jamba, J. T. LaBalbo, Lorraine E. Mercier, Clayton E. Mitchell, Paul Muscarnera and Norma W. Paquin, Plaintiffs,

v.

COMMUNICATIONS WORKERS OF AMERICA (C.W.A.), an unincorporated labor organization; C.W.A. District I: C.W.A. Committee on Political Education: Local 1101 of C.W.A.; Local 1111 of C.W.A.; Local 1123 of C.W.A.; Local 1124 of C.W.A.; Local 1126 of C.W.A.; Local 1127 of C.W.A.; Local 1128 of C.W.A.; American Federation of Labor-Congress of Industrial Organizations (AFL-CIO), a federation of national and international labor organizations; AFL-CIO New York State Central Body; AFL-CIO Committee on Political Educations; and New York Telephone Company, a corporation, Defendants.

No. 75–CV–268.

United States District Court, N. D. New York.

Feb. 25, 1981.

*Company*, 585 F.2d 47, 53 (3d Cir. 1978).

National Right to Work Legal Defense Foundations, Inc., Springfield, Va., for plaintiffs; Hugh L. Reilly, Kensington, Md., John E. Shaffer, Syracuse, N. Y., of counsel.

Thomas P. McMahon, Buffalo, N. Y., for defendants AFL–CIO, AFL–CIO New York State Central Body and AFL–CIO COPE.

Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N. Y., for defendants C.W.A., C.W.A. District I, C.W.A.–COPE and C.W.A. Locals 1101, 1111, 1123, 1124, 1126, 1127 and 1128; Richard Lipsitz, Buffalo, N. Y., Charles V. Koons, Kane & Koons, Washington, D. C., of counsel.

Michael Hertzberg, New York City, for defendant New York Tel. Co.

MUNSON, Chief Judge.

### MEMORANDUM DECISION AND ORDER

The plaintiffs in this labor action are eighteen nonunion employees of the defend-

ant New York Telephone Company (Telco) who contest, *inter alia*, the allegedly improper use by the defendant Communications Workers of America (CWA) of the plaintiffs' agency fees. The gravamen of this particular challenge is that the CWA has wrongfully applied their fees to activities unrelated to collective bargaining, contract administration, and grievance adjustment. For this asserted wrongdoing, the plaintiffs seek declaratory judgment relief.

Presently before the Court are motions by the plaintiffs for partial summary judgment on this issue, and by the defendant Telco for judgment on the pleadings on the ground that the complaint fails to state a claim against it upon which relief can be granted. Additionally, there are various discovery-related matters.

## I.

### A.

With respect to the plaintiffs' motion for partial summary judgment against CWA, these persons seek a declaratory judgment that their agency shop obligation, which is authorized under § 8(a)(3) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(3), is limited to the costs of collective bargaining, contract administrations, and grievance adjustment. Insofar as the CWA spends agency fees for other purposes, the plaintiffs contend, the CWA has infringed their rights under the First and Fifth Amendments to the United States Constitution. Relying on *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977); *Beck v. Communications Workers of America*, 468 F.Supp. 93 (D.Md.1979).

In response to these arguments, CWA argues that the plaintiffs cannot prevail upon any First Amendment claims because of the absence of any governmental action. Relying on *Buckley v. American Federation of Television and Radio Artists*, 496 F.2d 305 (2d Cir.), *cert. denied*, 419 U.S. 1093, 95 S.Ct. 688, 42 L.Ed.2d 687 (1974). Additionally, CWA maintains that the law of the case, as allegedly declared by this Court in

the Memorandum-Decision and Order by Judge Foley, dated February 11, 1976, is that no governmental action is present in this case, and thus no cause of action exists under the First and Fifth Amendments. Finally, the defendant avers that there is a triable issue of material fact as to what, if any, expenditures were unrelated to the costs of collective bargaining, contract administration, and grievance adjustment.

This last objection by CWA is merely illusory. The plaintiffs have raised a threshold question of whether the First and Fifth Amendments require the defendant to expend agency fees only for the limited purposes of collective bargaining, contract administration, and grievance adjustment. A resolution of this issue provides no solution to the questions of what costs may be regarded as related to these specific purposes. See *Abood v. Detroit Board of Education*, 431 U.S. at 236, 97 S.Ct. at 1800. For this reason, the defendant's objections seem premature at this time.

In regard to the "law of the case" argument raised by the defendant, this Court indeed indicated in its earlier decision that the plaintiffs could not assert a cause of action under the First Amendment. Citing *Buckley v. American Federation of Television and Radio Artists, supra.* The language to this effect, however, was dictum asserted in the context of concluding that this Court had jurisdiction to adjudicate the plaintiffs' First Amendment claim. Moreover, *Buckley* plainly did not reach the question of whether governmental action was present. *Id.* at 310. Instead, the court assumed *arguendo* the involvement of governmental action, and then found that the contested practice did not violate the First Amendment. *Id.* at 311.

Turning, then, to the merits of the employees' arguments, it is well-settled that ordinary principles of local contract law usually govern the relationship between a union and its members. *See, e. g., NLRB v. Boeing Company*, 412 U.S. 67, 75–76, 93 S.Ct. 1952, 1957, 36 L.Ed.2d 752 (1973). Of course, the reach of common law contract principles may stop at the point where any

statutes supply the governing rules. For example, union security agreements, like an agency shop arrangement, have been upheld as permissible features of collective bargaining agreements under both § 8(a)(3) of the NLRA, 29 U.S.C. § 158(a)(3) and § 2, Eleventh of the Railway Labor Act (RLA), 45 U.S.C. § 152. *See, e. g., Retail Clerks International Association v. Schermerhorn*, 373 U.S. 746, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1973) (NLRA); *NLRB v. General Motors Corp.*, 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963) (NLRA); *International Association of Machinists v. Street*, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961) (RLA). In addition, the Supreme Court of the United States has interpreted the RLA as restricting the expenditure by unions of agency fees to "costs of negotiating and administering collective agreements and . . . of the adjustment and settlement of disputes." *International Association of Machinists v. Street*, 367 U.S. at 764, 81 S.Ct. at 764. *See First National Bank of Boston v. Bellotti*, 435 U.S. 765, 794–95 n. 34, 98 S.Ct. 1407, 1425–26 n.34, 55 L.Ed.2d 707 (1978); *Brotherhood of Railway & Steamship Clerks v. Allen*, 373 U.S. 113, 120, 83 S.Ct. 1158, 1162, 10 L.Ed.2d 235 (1963). Furthermore, at least one circuit court appears to have interpreted the NLRA, in light of the RLA decisions of the Supreme Court, as requiring a limitation of the use of agency fees to the costs of negotiating and administering collective bargaining agreements and of adjusting and settling disputes. *See Seay v. McDonnell Douglas Corporation*, 427 F.2d 996, 1000–01 & n. 3 (9th Cir. 1970) (citing *Allen, supra; Street, supra.*)

In their present motion, the plaintiffs raise a constitutional challenge under the First and Fifth Amendments, and not contractual or statutory claims. In this regard, certain rights protected by the First Amendment have received special attention in the labor context. For example, in *Railway Employees' Department v. Hanson*, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956), the Supreme Court found no evidence that a contested union-shop arrangement authorized by § 2, Eleventh of the RLA impaired the employees' First Amendment rights to freedom of conscience, freedom of association, and freedom of thought. In *International Association of Machinists v. Street*, 367 U.S. at 748–51, 81 S.Ct. at 1789–90, the Court avoided the "grav(e)" constitutional questions raised concerning the freedoms of association and expression. More recently, in *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977) the Court concluded that a state statutory scheme permitting agency shop arrangements, which allowed the expenditure of monies, for purposes unrelated to collective bargaining, violated the employees' freedoms of association and expression, as guaranteed by the First and Fourteenth Amendments.

■ It is not unsurprising that employees do not lose their First Amendment rights under a union security arrangement. The guarantees under the First Amendment, however, embrace only abridgments by federal or state governments. *See, e. g., First National Bank of Boston v. Bellotti*, 435 U.S. at 794 n. 34, 98 S.Ct. at 1425 n. 34; *Abood v. Detroit Board of Education*, 431 U.S. at 226–27 & n. 23, 97 S.Ct. at 1794–95 & n. 23; *Columbia Broadcasting Systems, Inc., v. Democratic National Committee*, 412 U.S. 94, 114, 93 S.Ct. 2080, 2092, 36 L.Ed.2d 772 (1973); *Railway Employees' Department v. Hanson*, 351 U.S. at 232, 76 S.Ct. at 718; *Jensen v. Farrell Lines, Inc.*, 625 F.2d 379, 384, (2d Cir. 1980); *Buckley v. American Federation of Television and Radio Artists*, 496 F.2d at 309; *Reid v. McDonnell Douglas Corp.*, 443 F.2d 408, 410 (10th Cir. 1971); *Linscott v. Millers Falls Company*, 440 F.2d 14, 16 (1st Cir.) *cert. denied*, 404 U.S. 872, 92 S.Ct. 77, 30 L.Ed.2d 116 (1971). The Second Circuit has recently identified two general approaches of the Supreme Court in determining whether private conduct is actually governmental action:

One is the state-function approach, in which courts must find that the conduct of the private actor is equivalent to the performing of a state function, or is traditionally associated with sovereignty . . . . (The private entity) must exercise

powers 'traditionally exclusively reserved to the State.' . . . The other general approach is to examine the conduct of the private actor and ask whether the state and the private actor have a 'symbiotic relationship,' . . . , making them so significantly involved with one another as to render the private actor subject to the constitutional responsibilities of the state. *Jensen v. Farrell Lines, Inc.*, 625 F.2d at 384 (citations omitted).

The difficult question that arises in a First Amendment inquiry thus concerns what is governmental action. At least one court, relying on *Abood*, has apparently implicitly concluded that governmental action is present in disputes concerning agency shop arrangements. *See Beck v. Communications Workers of America*, 468 F.Supp. at 96–97. The plaintiffs urge this Court to follow a similar approach. To be sure, the Court in *Abood* did not expound upon the presence of state action in that case. State action, however, clearly existed in *Abood*, a suit involving a state statutory scheme and state judicial enforcement of that scheme. Moreover, it is precisely because *Abood* concerned state action that its holding cannot be automatically applied to this case, which raises the question of the involvement of federal action.

With respect to the governmental action issue, then, courts are sharply divided over the question whether union security agreements authorized by the NLRA are infused with governmental action so as to support a cause of action under the First and Fifth Amendments. In *Linscott v. Millers Falls Company, supra,* the First Circuit found that governmental action inheres in such security agreements. Relying on *Hanson*, the Court rejected the argument that *Hanson* is distinguishable because, unlike the RLA, the NLRA does not preempt state law. 440 F.2d at 16. *See Buckley v. American Federation of Television and Radio Artists*, 419 U.S. 1093, 1093–96, 95 S.Ct. 688, 688–89, 42 L.Ed.2d 687 (Douglas, J., joined by Burger, C.J.) (dissenting from a denial of certiorari). In *Reid v. McDonnell Douglas Corp., supra,* however, the Tenth Circuit

regarded the distinction between the RLA and NLRA as dispositive, concluding that governmental action is lacking under the NLRA:

> In NLRA matters, the federal government does not appear to us to have insinuated itself into the decision of a union and employer to agree to a union security clause as to make that choice governmental action for purposes of the first and fifth amendments.

443 F.2d at 410–11. *See Buckley v. American Federation of Television and Radio Artists*, 496 F.2d at 309. Certain Justices have also intimated a reluctance to conclude that a statutory scheme transmutes otherwise private collective bargaining agreements into governmental action. *See Abood v. Detroit Board of Education*, 431 U.S. at 248–49 & n. 7, 97 S.Ct. at 1806–07 & n. 7 (Powell, J., joined by Burger, C.J., and Blackmun J.) (concurring in the judgment). The Second Circuit has avoided reaching this issue. *See Buckley v. American Federation of Television and Radio Artists*, 496 F.2d at 310.

■ This court sides with the position that governmental action is infused in the NLRA such that "the private actor (is) subject to the constitutional responsibilities of the state." *Jensen v. Farrell Lines, Inc.,* 625 F.2d at 384. As the Supreme Court noted in *NLRB v. Allis Chalmers Manufacturing Company*, 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967), 29 U.S.C. § 158 is part of a congressionally designed national labor policy that

> extinguishes the individual employee's power to order his own relations with his employer, and creates a power vested in the chosen representative to act in the interest of all employees. "Congress has seen fit to clothe the bargaining representative with powers comparable to those possessed by a legislative body both to create and restrict the rights of those whom it represents. . . ."

*Id.* at 180, 87 S.Ct. at 2006 (citation omitted). In addition, where, as here, there is no contrary state authority in this area, it becomes clear that "the federal statute is

*the* source of the power and authority by which any private rights are lost or spent . . . The enactment of the federal statute is the governmental action on which the Constitution operates, though it takes a private agreement to invoke the federal sanction." *Railway Employees' Department v. Hanson*, 351 U.S. at 232, 76 S.Ct. at 718 (emphasis supplied.) Moreover, "(o)nce courts enforce the agreement the sanction of government is, of course, put behind them." *Id.* at 232 n. 4, 76 S.Ct. at 718 n. 4. The First Circuit appreciated the enormity of such federal power in *Linscott*, noting that the union in that case could have instituted a federal suit, or unfair labor practice charge, if the employer had declined to discharge the employee according to the terms of the collective bargaining agreement. 440 F.2d at 17. Thus, it can be said that union security arrangements, like agency shops, carry the practical effect of a statutory mandate:

> When Congress authorizes an employer and a union to enter into union-shop agreements and makes such agreements binding and enforceable over the dissents of a minority of employees or union members, it has cast the weight of the Federal Government behind the agreement just as surely as if it had imposed them by statute.

*Buckley v. American Federation of Television and Radio Artists*, 419 U.S. at 1095, 95 S.Ct. at 688 (Douglas, J., dissenting from the denial of certiorari).

■ For these reasons, the nature of the governmental involvement here extends beyond the mere regulation of the private actor's conduct, and reaches the very essence of the statutorily protected status enjoyed by the union. Cf. *Jensen v. Farrell Lines, Inc.*, 625 F.2d at 387. Additionally, the federal government has affirmatively put its omnipresent weight and power in this case behind the agency shop clause contained in the collective bargaining agreement. *See id; Weise v. Syracuse University*, 522 F.2d 397, 405, 406–07 (2d Cir. 1975). Accordingly, in the absence of any contrary state authority, governmental action lies, in this case, so as to support a cause of action under the First and Fifth Amendments.

#### B.

■ Having concluded that governmental action is involved here, the next question is whether, on a balance, there is a legitimate governmental purpose that does not impermissibly impinge the First Amendment freedoms of association and expression that the plaintiffs assert. *See Elrod v. Burns*, 427 U.S. 347, 362, 96 S.Ct. 2673, 2684, 49 L.Ed.2d 547 (1976) (plurality opinion); *Cox v. New Hampshire*, 312 U.S. 569, 574, 61 S.Ct. 762, 765, 85 L.Ed. 1049 (1941); *Buckley v. American Federation of Television and Radio Artists*, 496 F.2d at 311. In this regard, "(t)he (governmental) interest advanced must be paramount, one of vital importance . . ." *Buckley v. Valeo*, 424 U.S. 1, 25, 96 S.Ct. 612, 637, 46 L.Ed.2d 659 (1976) (plurality opinion).

■ Certainly, as the Court concluded in *Abood*, "(t)he same important government interests recognized in the *Hanson* and *Street* cases presumptively support the impingement upon associational freedom created by the agency shop here at issue." 431 U.S. at 225, 97 S.Ct. at 1794. Hence, the instant agency shop arrangement is clearly valid insofar as it permits the use of agency fees "for the purposes of collective bargaining, contract administration, and grievance adjustment." *Id.* at 225–26, 97 S.Ct. at 1794. Because *Abood* rejected other compelling governmental interests in defense of expenditures for activities unrelated to collective bargaining, expenditures that were made over the objections of affected employees, *see id.* at 235–36, 97 S.Ct. at 1799–1800, this Court is constrained to reach an analogous result here.

Accordingly, it is ORDERED that the plaintiffs' motion for partial summary judgment be and hereby is granted. It is further ORDERED, ADJUDGED, and DECREED that CWA has wrongfully infringed the First Amendment right of any objecting plaintiffs to the extent it has expended any agency monies for activities

unrelated to collective bargaining. A decision concerning the identification of impermissible expenditures and of objecting plaintiffs shall be reserved for a later day.

## II.

The defendant Telco moves under Fed.R. Civ.P. 12(c) for dismissal of the complaint as against it. In this regard, two counts specifically pertain to this defendant. Count Four of the complaint alleges in effect that Telco violated § 8(a)(3) of the NLRA, 29 U.S.C. § 158(a)(3), and an implied term of the collective bargaining agreement by permitting the Union defendants to obtain and spend the plaintiffs' agency fees for activities unrelated to collective bargaining. Count Five of the complaint avers that Telco conspired with the Union defendants to violate the plaintiffs' constitutional rights, in contravention of 42 U.S.C. §§ 1985(3) and 1986. The employees have asserted no cause against Telco under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976); *Amalgamated Association of Street, Electric Railway & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 298–99, 91 S.Ct. 1909, 1923–24, 29 L.Ed.2d 473 (1971); *Vaca v. Sipes*, 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967); *Smith v. Evening News Association*, 371 U.S. 195, 198–200, 83 S.Ct. 267, 269–70, 9 L.Ed.2d 246 (1962); *Schultz v. Owens-Illinois, Inc.*, 560 F.2d 849, 852–55 (7th Cir. 1977), *cert. denied*, 434 U.S. 1011, 98 S.Ct. 723, 54 L.Ed.2d 754 (1978).

With respect to Count Four, under the collective bargaining agreement, employees of Telco may pay their agency fees either by tendering the monies directly to CWA or by authorizing Telco to deduct monies from their wages, after which Telco would then transfer the fees to CWA. The defendant contends that no law or court decision requires an employer to monitor or pass judgment on a union's expenditure of agency fees, and that the plaintiffs' suit is in fact a challenge to the union's usage of agency fees and not to any collection by Telco of the fees. Relying on *International Association of Machinists v. Street*, 367 U.S. at 771, 81 S.Ct. at 1801; *Reid v. McDonnell Douglas Corp.*, 443 F.2d at 413; *Lohr v. Association of Catholic Teachers*, 416 F.Supp. 619, 622–23 (E.D.Pa.1976).

Responding to this argument, the plaintiffs assert that the collective bargaining agreement is unlawful on its face, insofar as it allegedly misinforms employees of the agency fee obligation, and as applied, insofar as agency fees are spent on activities unrelated to collective bargaining. Additionally, the plaintiffs note that one of the defendants in *Abood*, and indeed the first named defendant in that case, was the employer.

■ The Court shares the position of the defendant employer in this action. Not only does no statute require an employer to supervise union expenditures, but also no contract provision requires the employer here to act affirmatively in regard to the plaintiffs' First Amendment rights. Moreover, any implied in law contract clause, to the effect of the First Amendment holding in this case, would impose a duty upon the union, and not upon Telco. In this regard, Article 33 of the collective bargaining agreement, which recited the agency shop agreement, explicitly imposes no affirmative duty upon the employer to inform the employees of their rights and obligations under the agreement. Finally, although an employer was a named defendant in *Abood*, the Court was presented in that case with a question of whether a cause of action contesting a statutory scheme, could be maintained under the First and Fourteenth Amendments, and not with the question of whom could be sued. 431 U.S. at 237, 97 S.Ct. at 1800.

Accordingly, it is ORDERED that the defendant Telco's motion for judgment on the pleadings is granted; and it is further ORDERED, that the plaintiffs' complaint as against the defendant Telco is dismissed.

## III.

■ The final matters concern the defendant CWA's objections to the plaintiffs'

interrogatories and request for the production of documents. In view of the disposition of the First Amendment issue in this case, many, if not all, of the objections of CWA to the interrogatories appear resolved. The request for the production of documents, however, does appear unduly overbroad. Accordingly, it is ORDERED, that the parties attempt to resolve the difficulties regarding CWA's answers to interrogatories; and it is further ORDERED, that the plaintiffs' request for production is stricken.