George L. SEAY et al., Appellants,

v.

McDONNELL DOUGLAS CORPORA-TION, a corporation, and International Association of Machinists and Aerospace Workers, Aeronautical District Lodge 1578, Appellees.

No. 23114.

United States Court of Appeals, Ninth Circuit.

June 3, 1970.

Jonathan C. Gibson (argued), of Welsh & Gibson, San Diego, Cal., Mc-Nutt, Dudley & Easterwood, Gall, Lane & Powell, Washington, D. C., for appellants.

Alfred M. Klein, (argued), of Rose, Klein & Marias, Los Angeles, Cal., Louis Lieber, Jr., Gene A. Powell, Santa Monica, Cal., for appellees.

Before BARNES, KILKENNY and TRASK, Circuit Judges.

TRASK, Circuit Judge.

This is an appeal by George L. Seay and twenty-eight other employees of McDonnell Douglas Corporation from the District Court's dismissal of their class action against the corporation and the International Association of Machinists and Aerospace Workers, Aeronautical District Lodge No. 1578, for lack of jurisdiction.

Appellants are employed by McDonnell Douglas in its missile and space systems division at plants in California. They are not members of appellee union but are subject to a collective bargaining agreement between the company and union which contains, in Article V thereof, a so-called agency fee agreement. Under this provision, union membership is optional but non-union employees, such as appellants, as a condition of employment, must pay to the union each month an agency fee equal to the monthly

membership dues established by the union for its members.

Appellants filed a complaint in the District Court on September 22, 1967, alleging that the compulsory agency fee payments made by them were being used in "substantial amounts" by the union to support the political campaigns of candidates for public office and were being employed "to propagate political and economic doctrines, concepts, ideologies, and legislative programs which are opposed by plaintiffs and the class they represent." Appellants further averred, in paragraph eight of their complaint:

"The exaction of compulsory agency fee payments from plaintiffs and the class they represent under threat of loss of their employment, and the use of such agency fee payments for the purposes aforesaid, imposes upon them political and ideological conformity, prevents them from exercising their rights and privileges as citizens of the United States, deprives them of their civil rights guaranteed to them under statutes of the United States, injures them in their persons and property, and abridges rights guaranteed to them under the First, Fifth, and Ninth Amendments to the United States Constitution which Amendments guarantee to individuals freedom of association, freedom of thought, freedom of speech, freedom of political action, freedom to pursue the occupations of their choice, freedom from unwarranted invasion of their privacy, and other fundamental personal rights and liberties."

Appellants also charged that the diversion of their agency fee payments for political purposes constituted a breach of the union's fiduciary duty to appellants and the class they represent to use the payments solely for purposes reasonably necessary and germane to collective bargaining.

Appellants requested relief in the form of (a) a declaratory judgment holding that the agency fee agreement in its operation and effect abridged appellants' statutory and constitutional rights; (b) an order requiring the union to account for its expenditures of agency fee payments; (c) a permanent injunction restraining appellees from enforcing the agency fee agreement as against appellants or members of the class they represent, and (d) a judgment for monetary damages for injuries sustained as a result of appellees' unlawful conduct.

Appellants asserted federal court jurisdiction over the subject matter of the suit by virtue of 28 U.S.C. § 1331(a) and 29 U.S.C. § 185.

Appellee company moved to dismiss the complaint for failure to state a claim for relief, pursuant to Rule 12(b) (6), Fed.R.Civ.P. This motion was denied on February 16, 1968 and, on May 6, 1968, the District Court held a hearing to determine whether it had jurisdiction over the subject matter of the complaint and whether the action was maintainable as a class action under Rule 23, Fed.R.Civ.P. On May 24, 1968, the court dismissed the complaint and action on the ground that the subject matter of the suit was within the exclusive primary jurisdiction of the National Labor Relations Board. Appellants now appeal from that judgment of dismissal. We disagree with the disposition of the case made by the trial court for the reasons we herein set forth.

### (1) *Appellants' Complaint*

■ As a preliminary matter, we must consider appellants' motion to amend their complaint in several particulars, filed in this court prior to oral argument. We grant that motion. Paragraphs I and II of the motion concern formal matters which received no objections from appellees.

Paragraphs III and IV of the motion seek to amend paragraph ten of the original complaint which alleged that the union in exacting the compulsory agency fee payments

" * * * owed and continued to owe a fiduciary duty to plaintiffs and the class they represent to use said payments for purposes reasonably neces-

sary and germane to collective bargaining purposes only;  * * *."

The amendment seeks to make plain that the duty is one of "fair representation and a duty under the collective bargaining agreement."

The Judicial Code in Section 1653, 28 U.S.C. § 1653, expressly provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." See Cox v. Livingston, 407 F.2d 392, 393 (2d Cir. 1969); Jones v. Freeman, 400 F.2d 383, 387 (8th Cir. 1968). Here the proposed amendment is closely related to the general allegations of the complaint. The issues which were briefed and argued encompassed the questions of fair representation and the effect of the collective bargaining agreement.

The trial court interpreted the allegations of the complaint narrowly as stating only a claim that the defendant union failed to use the agency fee payments for purposes necessary and germane to collective bargaining.

The trial court further stated that there had been "no charge that the union failed fairly and impartially to represent the plaintiffs either in collective bargaining with defendant company or in its enforcement of the resulting collective bargaining agreement." The complaint as we view it went far beyond such limited claims. It specifically asserted that proceeds from funds exacted from the plaintiffs under the terms of the agreement were used in substantial amounts for political and ideological purposes contrary to plaintiffs' wishes and in derogation of their constitutional rights under the First, Fifth and Ninth Amendments.

The District Court treated this controversy as an ordinary unfair labor practice case arising under 29 U.S.C. §§ 158(a) (3) and 158(b) (2), and involving a dispute "over fees payable under a union security provision." The court relied upon N.L.R.B. v. Technicolor Motion Picture Corp., 248 F.2d 348 (9th Cir. 1957), and Radio Officer's Union v. N. L.R.B., 347 U.S. 17, 74 S.Ct. 323, 98 L. Ed. 455 (1954). We do not regard those cases as controlling. In *N.L.R.B.* v. *Technicolor,* an employee did not pay his initiation fee for union membership within thirty days after a union security contract became effective. He subsequently tendered payment, but was discharged by his employer. The issue was whether the discharge was proper. Upon a complaint lodged by the employee, the case was handled through standard NLRB procedures without the issue of initial federal court jurisdiction or pre-emption being asserted. There was no question raised concerning improper use of exacted agency fees. *Radio Officers, supra,* likewise raised questions of the interpretation and effect of a collective bargaining agreement. It also was handled through regular Board procedures with no question being raised as to pre-emption or improper use of funds.

The answer of the International Association of Machinists (IAM) acknowledged that certain amounts which it considered *de minimis* were expended from all of its sources of income, including the money representing agency fees from plaintiffs, for political purposes and the election of political candidates. It alleged that these sums were reasonably necessary to strengthen the union and its bargaining position and to advance the interests of all employees by having more favorable legislation and elected public officials. It also admitted that the agency fee payments were extracted by the defendants acting under the authority of the National Labor Relations Act.

Within this framework of pleadings, however inartistically set forth, we believe jurisdiction was sufficiently alleged under 29 U.S.C. § 185.

### (2) *Jurisdiction*

Section 301 of The Labor-Management Relations Act, 29 U.S.C. § 185, reads as follows, in subsection (a):

"Suits for violation of contracts between an employer and a labor organi-

zation representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

We conclude that this provision confers jurisdiction upon the District Court. While appellants' complaint does not allege a violation of the collective bargaining agreement on its face inasmuch as the agreement does not specifically discuss the permissible purposes for which agency dues may be expended, Section 301 must be given a broad reading. *See* Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 456–457, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); Smith v. Evening News Ass'n, 371 U.S. 195, 199–200, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962).

Appellee union contends that since the contract does not contain any provision, express or implied, that agency fees payable thereunder "be properly used for purposes germane to collective bargaining", jurisdiction under Section 301 cannot be conferred. We disagree. Applying a broad interpretation, obedient to the Supreme Court, we determine that appellants' complaint alleges a violation of the agreement in that the agreement by implication imposes upon the union the well-recognized statutory duty of fair representation toward all employees. This duty evolved from ra-

cial discrimination cases.[1] It was applied to labor unions in Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). It is a duty to represent all of the employees—both members of the union and nonmembers —in utmost good faith and fairness.[2]

The ignoring of a grievance may violate the duty. Vaca v. Sipes, 386 U.S. 171, 194, 87 S.Ct. 903, 17 L. Ed.2d 842 (1967); St. Clair v. Local Union No. 515, 422 F.2d 128, 130 (6th Cir. 1969). The duty is breached when "a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, *supra*, 386 U.S. at 190, 87 S.Ct. at 916.

Appellants' complaint alleges a violation of the agreement in yet another particular. The Supreme Court has said as clearly as possible that agency fees exacted from employees under the terms of the bargaining agreement must be limited to use in sharing the costs with other dues of "negotiating and administering collective agreements, and the costs of the adjudgment and settlement of disputes."[3] This limitation is read into the statute under the terms of which the collective bargaining agreement, with its agency fee provision, was entered into in this case. We find that the limitation asserted here does in fact constitute an implied term of the contract. A provision in the collective bargaining agreement *authorizing* the expenditure of agency fees for political uses would immediately run afoul of the

1. See Steele v. Lousiville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944); Tunstall v. Bro'hood of Locomotive Firemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944).

2. "Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). See also

Humphrey. v. Moore, 375 U.S. 335, 342, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Ford Motor Co. v. Huffman, *supra*, 345 U.S. at 337, 73 S.Ct. 681, 97 L.Ed. 1048.

3. International Association of Machinists v. Street, 367 U.S. 740, 764, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961). See also Railway Employes' Dept. v. Hanson, 351 U.S. 225 76 S.Ct. 714, 100 L.Ed. 1112 (1956); Bro'hood of Railway and S. S. Clerks, Freight Handlers, Exp. & Station Emp. v. Allen, 373 U.S. 113, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963). These cases will be discussed infra.

congressional intent delineated in *Street* and the express holding in both *Street* and *Allen*.

The allegations of the plaintiffs' complaint fairly encompass an issue to this effect. The admissions in the union's answer confirming the proscribed uses here, confirm that issue. Those allegations assert that the defendants owe a "fiduciary duty" to the plaintiffs not to use their money over their protests for unauthorized purposes. They seek a declaration that the unauthorized expenditures deny and abridge "the statutory and constitutional rights" of the plaintiffs.

The cases which have interpreted Section 301, 29 U.S.C. § 185, support jurisdiction here and are in general agreement that the section should not be given a narrow reading.[4] Certainly the construction given to the statute here does no violence to Congressional intent or judicial interpretation.

Appellees assert that the question of federal court jurisdiction has been decided adversely to appellants in two cases involving the same union and company as here, and that these decisions should control. Heineman v. Douglas Aircraft Co., 211 F.Supp. 76 (S.D.Cal. 1962); Reed v. McDonnell Douglas Corp., N.D.Okla., January 26, 1970. *Heineman* is in no way dispositive of the case at bar as the court there construed plaintiffs-employees' complaint as one constituting an unfair labor practice under the NLRA. The court properly dismissed for lack of jurisdiction as the Board clearly has primary jurisdiction over such a complaint. The court in *Reed* likewise dismissed because it found that primary exclusive jurisdiction of plaintiffs' complaint resided in the Board. From the materials in *Reed* presented to this court, it appears that plaintiffs-employees therein did not raise the issue of breach of duty of fair representation. However, in the event that this issue was presented and the case might be said to be squarely on point, we decline to follow it.

Appellees advance before this court two additional arguments for affirmance of the District Court order. They argue that the court lacks jurisdiction because appellants have failed to exhaust grievance and arbitration procedures provided for in the collective bargaining agreement and because the pre-emption doctrine operates to give the NLRB primary jurisdiction of the subject matter. We reject both arguments.

(3) *Exhaustion of grievance and arbitration procedures*

The District Court concluded that, even if jurisdiction was otherwise conferred upon it by 29 U.S.C. § 185, "jurisdiction cannot be founded * * * because * * * plaintiffs have failed to exhaust the grievance and arbitration provisions in the collective bargaining agreement."

The Supreme Court has required that an employee, at minimum, must attempt to exhaust exclusive grievance and arbitration procedures established by a bargaining agreement before bringing an action in the courts. Republic Steel Corp. v. Maddox, 379 U.S. 650, 652–653, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); Vaca v. Sipes, *supra*, 386 U.S. at 184–185, 87 S.Ct. 903.

■ Here, there is evidence that several appellants attempted to exhaust these procedures. Contained in the record are the verified answers to interrogatories of a number of the appellants in which they state under oath that they did make objection both orally and in writing. Their objections went unheeded. An employee is not required to do more than that. The Supreme Court

---

4. See, e. g., Smith v. Evening News Ass'n., *supra*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed. 2d 246; Textile Workers Union v. Lincoln Mills, *supra*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972; Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); Chasis v. Progress Mfg. Co., 382 F.2d 773 (3d Cir. 1967); Textile Workers Union of America v. American Thread Co., 113 F. Supp. 137 (D.Mass.1953).

stated in Glover v. St. Louis-S.F. Ry. Co., 393 U.S. 324, 330–331, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), that, where the union or company would be required

> "to pass on claims by the very employees whose rights they have been charged with neglecting and betraying * * * the *attempt* to exhaust contractual remedies, required under *Maddox*, is easily satisfied by petitioners' repeated complaints to company and union officials, and no time-consuming formalities should be demanded of them."

*See also* Brady v. Trans World Airlines, Inc., 167 F.Supp. 469, 472 (D.Del.1958).

It may well be that not all appellants made an attempt to advise the company or union of their grievances. Whether or not each appellant attempted to exhaust contractual remedies is a question to be determined by the District Court on remand.

### (4) *Pre-emption*

■ The District Court held that a compulsory agency fee arrangement was a permissible and valid form of union security under the facts alleged here and the law applicable to them. We agree. See N.L.R.B. v. General Motors Corp., 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963). *Cf.* Railway Employees' Dept. v. Hanson, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956).

The Court then determined that the plaintiffs' claim arising out of misuse of agency fees constituted a dispute cognizable as an unfair labor practice under the National Labor Relations Act, 29 U.S.C. § 151 et seq., and, therefore, the pre-emption doctrine obtained, under which exclusive primary jurisdiction was with the National Labor Relations Board. See, e. g., San Diego Building Trades Council Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); Local 207, International Ass'n of Bridge, Structural and Ornamental Iron Workers Union v. Perko, 373 U.S. 701, 83 S. Ct. 1429, 10 L.Ed.2d 646 (1963); Vaca

v. Sipes, *supra*, 386 U.S. at 178–179, 87 S.Ct. 903. With this, we disagree.

■ While the extraction of the money as agency fees was accomplished pursuant to the bargaining agreement, we find nothing in the agreement which permitted the expenditure of the funds for an unauthorized purpose. It was this asserted misuse of funds which is the basis of the litigation; not the fact that they are obtained by any agency fee arrangement. As such this is not an unfair labor practice nor does the legal problem constitute a grievance with which the Board would possess particular knowledge or expertise.

The pre-emption doctrine "has never been rigidly applied to cases where it could not fairly be inferred that Congress intended exclusive jurisdiction to be with the NLRB." Pre-emption depends upon "the nature of the particular interests being asserted and the effect upon the administration of national labor policies of concurrent judicial and administrative remedies." Vaca v. Sipes, *supra*, 386 U.S. at 179, 180, 87 S. Ct. at 911.

Here, appellants' amended complaint alleges a breach of the union's duty of fair representation. In a recent case arising out of the Railway Labor Act, the Supreme Court said,

> "[S]urely it is beyond cavil that a suit against the union for breach of its duty of fair representation is not within the jurisdiction of the National Railroad Adjustment Board nor subject to the ordinary rule that administrative remedies should be exhausted before resort to the courts." Czosek v. O'Mara, 397 U.S. 25, 27–28, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970).

■ Appellants' complaint further alleges a question arising under the United States Constitution. The policy behind the pre-emption doctrine is not served by deferring to the Board where a constitutional question is validly presented. The Board's special expertise in labor controversies does not extend to the interpretation of the Consti-

tution. That field has traditionally been reserved to the courts.

A consideration of the constitutional claims advanced by appellants is important to a solution of the jurisdictional question involved.[5] These same constitutional claims were made in Railway Employes' Dept. v. Hanson, *supra*, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 and in International Ass'n of Machinists v. Street, *supra*, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141. In those cases the labor law involved was the Railway Labor Act. Both the applicable provision of that Act—45 U.S.C. § 152, Eleventh —and the applicable provision of the National Labor Relations Act—29 U.S.C. § 158(a) (3)—are for all purposes here, the same. Both acts are based upon the power of Congress to regulate interstate commerce. *Cf.* Textile Workers Union of America v. Lincoln Mills, *supra*, 353 U.S. at 458, 77 S.Ct. 912.

In *Hanson, supra,* the Court declined to pass upon the constitutional claims asserted, saying,

"It is argued that compulsory membership will be used to impair freedom of expression. But that problem is not presented by this record. Congress endeavored to safeguard against that possibility by making explicit that no conditions to membership may be imposed except as respects 'periodic dues, initiation fees, and assessments.' If other conditions are in fact imposed, or if the exaction of dues, initiation fees, and assessments is used as a cover for forcing ideological conformity or other action in contravention of the First Amendment, this judgment will not prejudice the decision in that case." 351 U.S. at 238, 76 S.Ct. at 721.

The Court held that the section of the Railway Labor Act challenged was constitutional and did not violate either the First or the Fifth Amendment. The language used to indicate the concern of the Court over First Amendment freedoms in the context of the labor laws was a harbinger of *Street*.

In *Street, supra,* a group of labor organizations and rail carriers entered into a union-shop agreement pursuant to Section 2, Eleventh of the Railway Labor Act.[6] A group of employees brought suit in the Georgia courts alleging that the money each was compelled to pay to the union to hold his job was in substantial part used to promote political and economic concepts with which he disagreed. A constitutional violation under the First and Fifth Amendments was asserted and sustained.[7]

On appeal, the Supreme Court found that the record was adequate to squarely present the constitutional issues reserved in *Hanson*. It noted that such questions were of the utmost gravity. The Court then decided that since the issues could be decided on the ground of statutory construction, the constitutional problems would again be reserved. It stated:

"The conclusion to which this history clearly points is that § 2, Eleventh contemplated compulsory unionism to force employees to share the costs of negotiating and administering collective agreements, and the costs of the adjustment and settlement of disputes. One looks in vain for any suggestion that Congress also meant in § 2, Eleventh to provide the unions with a means for forcing employees, over their objection, to support political causes which they oppose." 367 U.S. at 763–764, 81 S.Ct. at 1797.

Bro'hood of Railway and S. S. Clerks, Freight Handlers, Exp. and Station Emp. v. Allen, 373 U.S. 113, 83 S.Ct.

---

5. The defendant, IAM, admitted in its answer that it did in fact expend sums from all income including agency fee payments for political purposes; it also alleged that such contributions were reasonably necessary to strengthen the union "by having more favorable legislation and elected public officials."

6. 45 U.S.C. § 152, Eleventh.

7. See International Association of Machinists v. Street, 215 Ga. 27, 108 S.E.2d 796 (1959).

1158, 10 L.Ed.2d 235 (1963), answered the same question the same way and re-affirmed *Street* by saying,

"We held in Street 'that § 2, Eleventh is to be construed to deny the unions, over an employee's objection, the power to use his exacted funds to support political causes which he opposes.'" 373 U.S. at 118, 83 S.Ct. at 1161.

The position taken by the Court in *Hanson, Street* and *Allen* is strong medicine. It is not equivocal. Indeed, it contains constitutional overtones which appear to be foregone only by use of statutory construction to avoid First and Fifth Amendment issues. Under such circumstances we are not impressed by appellee's *"de minimis"* contentions. The diversion of the employees' money from use for the purposes for which it was exacted damages them doubly. Its utilization to support candidates and causes the plaintiffs oppose renders them captive to the ideas, associations and causes espoused by others. At the same time it depletes their own funds and resources to the extent of the expropriation and renders them unable by these amounts to express their own convictions and their own ideas and to support their own causes.

### (5) *Class action*

Plaintiffs' complaint was filed on behalf of themselves and all other

" * * * members of a class of employees of McDonnell Douglas who are not members of the defendant IAM union but are, under the terms of the above-quoted union security clause of the collective bargaining agreement, required to pay to the said IAM each month an agency fee equal to monthly membership dues established by the said union for its members."

Appellees contend that this action may not be maintained as a class action un-der Rule 23, Fed.R.Civ.P. The District Court, by dismissing the complaint on other grounds, did not reach this issue, but commented that International Ass'n of Machinists v. Street, *supra*, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141, and Bro'hood of Railway and S. S. Clerks, Freight Handlers, Exp. and Station Emp. v. Allen, 373 U.S. 113, 83 S.Ct. 1158, 10 L.Ed.2d 235, appeared to be controlling.

■ We agree. The Court stated in *Street:*

"[I]t follows that the present action is not a true class action, for there is no attempt to prove the existence of a class of workers who had specifically objected to the exaction of dues for political purposes. *See* Hansberry v. Lee, 311 U.S. 32, 44, 61 S.Ct. 115, 85 L.Ed. 22. Thus we think that only those who have identified themselves as opposed to political uses of their funds are entitled to relief in this action." 367 U.S. at 774, 81 S.Ct. at 1803.

See also *Allen, supra,* 373 U.S. at 116, 83 S.Ct. at 1803 n. 4.

The District Court, on remand, should include as members of the class only those employees who have satisfied the court that they made an attempt to advise the company or union that they objected to the exaction of dues for political purposes. *Cf.* Glover v. St. Louis-S.F. Ry. Co., *supra,* 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519.

Since jurisdiction exists, we find that it will be necessary to remand the case. The plaintiffs on remand should be permitted to amend to more clearly set out their claim and to state a cause of action against McDonnell Douglas if such is possible.

We therefore reverse the order of the trial court and direct that the complaint be reinstated with leave to amend.