917 F.2d 1223
 59 USLW 2305, 63 Ed. Law Rep. 759
 Debra J. GRUNWALD; Lewis N. Adams; Vicki S. Burdeaux;
Maria Buselle, et alii, Plaintiffs-Appellants,
v.
SAN BERNARDINO CITY UNIFIED SCHOOL DISTRICT; Shelby
Obershaw, President, SBCUSD; Hardy L. Brown, Vice
President, SBCUSD; Elisa Diaz, School Board Member, et
alii; San Bernardino Teachers Association, CTA/NEA,
Defendants-Appellees.
Debra J. GRUNWALD; Lewis N. Adams; Vicki S. Burdeaux;
Maria Buselle, et alii, Plaintiffs-Appellees,
v.
SAN BERNARDINO TEACHERS ASSOCIATION, CTA/NEA, Defendant-Appellant.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 29, 1990.
Decided Oct. 31, 1990.
 
 Milton L. Chappell, Nat. Right to Work Legal Defense Foundation, Springfield, Va., for plaintiffs-appellants/plaintiffs-appellees Debra J. Grunwald, et alii.
 Karen E. Gilyard, Atkinson, Andelson, Loya, Ruud & Romo, San Bernardino, Cal., for defendants-appellees San Bernardino City Unified School Dist., et alii.
 Jeremiah A. Collins, Bredhoff & Kaiser, Washington, D.C., for defendant-appellee/defendant-appellant San Bernardino Teachers Ass'n, CTA/NEA.
 Appeal from the United States District Court for the Central District of California.
 Before NELSON, BRUNETTI and KOZINSKI, Circuit Judges.
 BRUNETTI, Circuit Judge:
 
 
 1
 Debra Grunwald and 48 other non-union teachers ("teachers") filed suit in the district court under 42 U.S.C. Sec. 1983 alleging that the procedure by which the San Bernardino Teachers Association ("SBTA") and the San Bernardino City Unified School District ("the District") collected agency shop fees violated their first and fourteenth amendment rights. The district court entered a permanent injunction upholding the method of the collection of agency shop fees as constitutional. The court also ordered the District to provide rebates to teachers who had not formally objected to the fees. The teachers appeal the district court's failure to enjoin the collection of the fees, and SBTA cross-appeals the district court's order to pay rebates to the teachers.FACTS AND PROCEEDINGS BELOW
 
 
 2
 Plaintiffs-teachers are employed by the defendant San Bernardino City Unified School District. They are not members of the defendant San Bernardino Teachers Association, the exclusive collective bargaining representative for teachers in the District.
 
 
 3
 SBTA and the District have an agency shop agreement. An agency shop agreement requires non-union members to pay a fee to the union for acting as their bargaining representative. Teachers who choose not to join the SBTA are required to pay an agency fee to the SBTA in order to offset their pro rata share of the costs of representation. These agency fees are deducted by the District on a 10-month basis, corresponding to the 10-month school year during which teachers are paid, with the first deduction occurring on September 30 and the last on June 30. Initially, each deduction made by the District is in the amount of one-tenth of the annual membership dues. If a nonmember objects to the amount of the fee, he/she eventually pays a reduced fee that excludes the portion attributable to matters unrelated to collective bargaining expenses.
 
 
 4
 The teachers concede that agency fee arrangements can be constitutional, but argue that the procedures for collecting the fee and amount of the fee violate their constitutional rights. The SBTA procedure provides that from the start of the year, all agency fees will be placed into an independently managed interest-bearing escrow account.[1] By October 15, a notice is sent to all fee payers. The notice advises them of their right to receive a rebate for the portion of the fee that is not attributable to collective bargaining expenses and explains how a fee payer requests a rebate. The objection procedure requires the teacher to send a letter to the California Teacher's Association's Membership Accounting Department. The notice also provides the SBTA's calculation of the percentage of dues that the SBTA believes to be "chargeable," with detailed back-up material.[2]
 
 
 5
 The notice explains that from the start of the school year the SBTA will place all agency fees received into escrow, but that an individual's fees will be released from escrow if he or she does not submit an objection by November 15. If the individual does object, he or she may either (i) accept the SBTA's calculation of the chargeable percentage, in which case a rebate is issued by December 7 for the entire year; or (ii) request the opportunity to have the amount of the fee determined in arbitration before a neutral decisionmaker, in which case a rebate check is not sent until after receipt of the arbitrator's decision.
 
 
 6
 Under the SBTA's procedure, in 1987-88 those fee payers who objected to paying the full fee but who accepted the SBTA's determination of the chargeable portion received their rebate by early December. At that point they had only paid three-tenths of the total annual agency fee (via deductions at the end of September, October and November). They were issued rebate checks in the amount of the non-chargeable portion of the entire year's fee. The fees received from those objectors who did not accept the SBTA's determination of the chargeable amount remained in escrow until the dispute could be resolved through arbitration, which took place on January 11 through 16, 1988. Objectors received rebate checks for the entire year before the April 30 fee deduction.
 
 
 7
 Under the agency fee agreement, the SBTA requested payment from non-union teachers in February, March and April of 1987. Plaintiffs-teachers requested no deduction be made. Deductions were to begin in May of 1987. The teachers filed this Sec. 1983 suit in May, requesting a temporary injunction against the collection of the fees and damages. The district court refused to enjoin the collection of fees but issued a temporary restraining order requiring the SBTA to place all agency fees collected in an escrow account.
 
 
 8
 In June, the district court issued a preliminary injunction ordering the SBTA to place the fees in an escrow account. The court found that the SBTA's procedures in collecting the agency fees, which included giving no advance notice of the deduction and initially deducting fees equal to 100% of union dues, were constitutional. In July, both parties waived a full trial. The teachers filed a motion for a permanent injunction. The court, in looking at the 1987-88 fee deductions and rebate procedures, again refused to enjoin the collection of the fees. It found the SBTA's procedures were constitutional.[3] The court also ordered the SBTA to pay a rebate to the teachers who filed the complaint because the court found the complaint substantially complied with the formal objection procedures required by the SBTA.
 
 
 9
 The teachers appeal the denial of the injunction, claiming the SBTA's collection procedures are unconstitutional. The SBTA cross-appeals the order to pay rebates. The District joins in the SBTA's arguments against rebates.[4] We reverse in part and affirm in part.
 
 STANDARD OF REVIEW
 
 10
 A district court's conclusions on questions of law that implicate constitutional rights are reviewed de novo. Wood v. Sunn, 865 F.2d 982, 986 (9th Cir.1988).
 
 DISCUSSION
 
 11
 I. Constitutionality of Fee Collection Procedure
 
 
 12
 The teachers argue that the District's procedure for the collection of agency shop fees violates their first and fourteenth amendment rights because the procedure by which SBTA collects the nonmember fees does not satisfy the requirements set out by the Supreme Court in Chicago Teachers Union v. Hudson, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). Specifically, the teachers argue the deduction procedure violates their constitutional rights because the fee deducted is equal to 100% of members' dues and no notice is given before the deductions occur.
 
 
 13
 The district court ruled the agency fee procedure was constitutional. The court held that Hudson does not require advance reductions in the amount of fees collected because the 100% escrow of all nonmember funds until the proportion of chargeable expenditures is determined satisfies the constitutional requirement that nonmember fees not be used for ideological purposes by the SBTA. The court also found that no advance notice of the agency fee deductions was required to satisfy Hudson.
 
 
 14
 The Supreme Court has recognized that a union representing public employees has a right to require nonunion employees to contribute to the union's cost of collective bargaining as a condition of employment. Chicago Teachers Union v. Hudson, 475 U.S. 292, 301, 106 S.Ct. 1066, 1073, 89 L.Ed.2d 232 (1986); Abood v. Detroit Bd. of Educ., 431 U.S. 209, 232, 97 S.Ct. 1782, 1798, 52 L.Ed.2d 261 (1977). In Hudson, the Court acknowledged that the collection and expenditure of union fees implicate nonunion employees' first amendment rights, both by forced subsidization of ideological views and by interference with the freedom of association.[5] Hudson, 475 U.S. at 301, 106 S.Ct. at 1073. In striking a balance between the union's and the nonunion employees' rights, " 'the objective must be to devise a way of preventing compulsory subsidization of ideological activity by employees who object thereto without restricting the Union's ability to require every employee to contribute to the cost of collective bargaining activities.' " Id. at 302, 106 S.Ct. at 1073 (citations omitted).
 
 
 15
 The Court found that certain procedural safeguards must be incorporated into the collection procedure to achieve this objective and identified three procedural requirements a plan must meet in order to protect the nonunion members' constitutional interests. First, the procedure must avoid the risk that nonunion members fees will be used, even temporarily, to finance ideological activities unrelated to collective bargaining. Id. at 305, 309, 106 S.Ct. at 1075, 1077. Second, the plan must also provide nonmembers adequate information of the basis for the calculation of the proportionate fee. Id. at 306, 106 S.Ct. at 1075. Lastly, the nonmembers must be given a reasonably prompt opportunity to challenge the amount before an impartial decision maker. Id. at 307, 106 S.Ct. at 1076.
 
 
 16
 The teachers contend that the SBTA's procedure is unconstitutional because it fails to satisfy two of the procedural requirements set out in Hudson. The teachers argue the procedure fails to satisfy the first prong of Hudson because SBTA does not give advance reductions in fees, and that the plan fails to fulfill the second Hudson requirement because notice is not given before any deductions are made.
 
 
 17
 A. Advance Reduction.
 
 
 18
 The teachers first argue that SBTA's failure to reduce the agency fee assessed by an amount equal to the percentage of funds not attributable to collective bargaining activities violates Hudson, even though the SBTA procedure does escrow 100% of the fees paid by nonmembers until the period for objection has passed.
 
 
 19
 The circuits differ over whether the advance reduction of fees is required by Hudson when the union escrows the fees. Compare Tierney v. City of Toledo, 824 F.2d 1497, 1502-03 (6th Cir.1987) (advance reduction required), with Crawford v. Airline Pilots Ass'n Int'l, 870 F.2d 155, 161 (4th Cir.1989) (no advance reduction required if fees escrowed), Hohe v. Casey, 868 F.2d 69, 72 (3rd Cir.1989) (no advance reduction required if fees escrowed), Andrews v. Education Ass'n of Cheshire, 829 F.2d 335, 339 (2d Cir.1987) (100% escrow satisfies Hudson ), and Gibson v. The Florida Bar, 906 F.2d 624 (11th Cir.1990) (no advance reduction necessary).
 
 
 20
 In Tierney, the Sixth Circuit found advance reductions were required to satisfy Hudson's first procedural requirement that the union procedure for collecting agency shop fees from nonunion members must avoid the risk that nonmembers' funds may be used temporarily for an improper purpose. Tierney, 824 F.2d at 1502. The
 
 
 21
 Tierney court held that Hudson does not allow the union to compel a nonunion employee to contribute any sum, even if placed in escrow, which unquestionably represents ideological expenses of the Union, and stated that "the Supreme Court's approval of 100% escrow as satisfying Hudson's first requirement refers to escrowing 100% of the remaining, non-clearly ideological proportion of the fee which the union may collect." Id. at 1504. Therefore, they concluded a union must reduce the amount of fees collected by the amount of its ideological expenditures before it collects the agency shop fee--an advance reduction. Id. at 1502-03.
 
 
 22
 We agree with Tierney and hold that advance reductions of agency shop fees are required by Hudson even where the agency fee procedure includes an escrow of 100% of the collected agency fees.[6] Because the collection of agency shop fees infringes nonunion employees' First Amendment rights, the procedure for the collection of the fees must be carefully tailored to minimize the infringement. Hudson, 475 U.S. at 303, 106 S.Ct. at 1074. In order to be carefully tailored, the union must deduct only the amount it is entitled to, i.e. the amount arguably related to its collective bargaining expenses.
 
 
 23
 The SBTA's procedure is not carefully tailored to minimize any infringement. The SBTA collects an agency fee equal to 100% of the union dues, thereby collecting more than they are entitled to since only some of the dues are attributable to collective bargaining expenses.[7] The SBTA can only deduct a reasonable estimate of the percentage of fees attributable to collective bargaining. Thus, the SBTA must first determine the percentage of union expenses spent on activities unrelated to collective bargaining and then calculate the advance reduction from the nonmembers' dues before it can make any deductions.
 
 
 24
 An agency fee collection procedure must include advance reductions and because SBTA's procedure does not provide for advance reductions, it is constitutionally infirm.
 
 
 25
 B. Notice.
 
 
 26
 Plaintiffs also argue that the SBTA's plan is unconstitutional because notice is not given in advance of the first deduction of fees from the teachers' pay checks as required by the second prong of Hudson. The district court rejected this argument because it found Hudson did not require advance notice.
 
 
 27
 Tierney required unions to give notice before any fees are deducted in order to fulfill Hudson's second requirement of providing nonmembers with adequate information to contest the fee. Tierney, 824 F.2d 1497 at 1503 (6th Cir.1987). Advance notice must be given to protect the nonmember's first amendment interest--a fair opportunity to identify the impact of the government action on his interests and assert a meritorious first amendment claim. Tierney, 824 F.2d at 1503.
 
 
 28
 We agree with Tierney and hold that notice of and adequate information concerning the agency fee must be given to all nonmembers before any fees may be collected from them. Id. at 1503. Hudson requires the union to give "potential objectors ... sufficient information to gauge the propriety of the union's fee." Hudson, 475 U.S. at 306, 106 S.Ct. at 1075 (emphasis added). If the SBTA must notify "potential" objectors by sending out notice of the agency fee before the first deduction is made, then the failure of the SBTA's procedure to give advance notice of the agency fee deduction renders the plan unconstitutional.II. Rebates to Teachers Who Did Not Comply With Objection Procedure
 
 
 29
 SBTA's agency fee collection procedure sets out specific steps for objecting fee payers to follow to receive a rebate. The procedure requires a fee payer to send a letter to the SBTA indicating that the fee payer objects to his fee being spent on nonchargeable activities and requesting a rebate. The Union argues the teachers failed to comply with the objection procedure and are thus not entitled to rebates.
 
 
 30
 The teachers in this case did not send an objection letter to the SBTA. Instead, they filed suit on May 27, 1987, one day before the SBTA sent out its Hudson notices that outlined the right to object. The district court found that the teachers had substantially complied with the notice requirement for objections because plaintiffs' complaint objected to the agency fee collection procedure as unconstitutional. We agree. The court ordered the SBTA to pay rebates to all plaintiffs for the 1986-87 school year.
 
 
 31
 The Supreme Court has clearly held that the nonunion employee has the burden of raising an objection. Hudson, 475 U.S. at 306, 106 S.Ct. at 1075. "The nonmember's 'burden' is simply the obligation to make his objection known." Id. at 306 n. 16, 106 S.Ct. at 1076 n. 16. Prior to Hudson, in Brotherhood of Railway & Steamship Clerks v. Allen, 373 U.S. 113, 119, 83 S.Ct. 1158, 1162, 10 L.Ed.2d 235 (1963), employees opposed to the use of union security fees did not object to the union but filed suit instead. The Supreme Court found that the complaint served as a sufficient notice of objection. Id. at 119, n. 6, 83 S.Ct. at 1162, n. 6. In Abood v. Detroit Board of Education, 431 U.S. 209, 241, 97 S.Ct. 1782, 1802, 52 L.Ed.2d 261 (1977), the Supreme Court again found that sufficient notice of objection was given by the nonunion employees' complaint, which alleged that they were opposed to the union's use of fees for causes unrelated to collective bargaining.
 
 
 32
 While both Allen and Abood involved disputes where the unions did not have objection procedures in place at the time the lawsuits were filed, in Hudson the Supreme Court appeared to endorse a complaint as providing adequate notice despite the fact that the union did have an objection procedure. In Hudson, the union had an objection procedure established at the time the nonmember employees filed their lawsuit. Hudson, 475 U.S. at 296, 106 S.Ct. at 1070. There were seven plaintiffs in the case, three of whom did not file a formal objection according to the procedure. Id. at 297, 106 S.Ct. at 1071. The Court found the union's procedure unconstitutional and remanded the case to the district court to determine an adequate remedy for all the plaintiffs, not just the four who formally objected. Id. at 310, 106 S.Ct. at 1077. Thus, a complaint may provide sufficient notice of objection.
 
 
 33
 In this case, the teacher's complaint challenged the constitutionality of the SBTA's plan, giving the SBTA sufficient notice of their objection to the collection of fees.
 
 III. Attorney's Fees
 
 34
 The teachers request attorney's fees. 42 U.S.C. Sec. 1988 authorizes the court to award attorney's fees to prevailing parties who bring suit under one of several statutes, including 42 U.S.C. Sec. 1983. The Supreme Court defined "prevailing party" in Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "Plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Id. at 433, 103 S.Ct. at 1939. The teachers in this case are prevailing parties as they succeeded in having the SBTA's procedure declared unconstitutional. Thus, they are entitled to attorney's fees in an amount to be determined by the district court on remand.
 
 CONCLUSION
 
 35
 The district court's award of rebates to the plaintiffs for the 1986-87 school year is affirmed. The SBTA's procedure for collection of agency shop fees fails to protect the nonmembers' constitutional rights as identified in Hudson. Therefore, we reverse the district court's decision finding the plan constitutional and remand for the entry of an appropriate injunction against the collection of agency shop fees until such time as the SBTA changes its procedure regarding advance reductions and advance notice. Further, the plaintiffs are entitled to attorney's fees in an amount to be determined by the district court.
 
 
 36
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 37
 KOZINSKI, Circuit Judge, dissenting in part:*
 
 
 38
 This case is about $8 a month in union agency fees. And it's not even about who gets the $8--everybody agrees that plaintiffs are entitled to the money--but about the precise timing and procedure for the rebate. It is over such a trifle--such a bagatelle, as the French would call it--that this lawsuit is brought, with all the attendant costs and burdens of modern litigation. At bottom, this is a protest action by certain teachers against a union to which they do not belong but to which they are forced to contribute financially. Their frustration is understandable, but they have chosen the wrong forum for resolving what is essentially a political dispute.
 
 
 39
 * I start with the proposition that, pursuant to state and federal labor laws, the union performs legitimate and important functions in its capacity as exclusive bargaining representative for teachers employed by the San Bernardino City Unified School District. That plaintiffs choose not to join the union makes no difference; they are deemed, by law, to receive substantial benefits from the union's representational activities, and they are required to contribute an agency fee to pay for these benefits. At issue here is only a small portion of the agency fee--about $8 per month--which the union spends on nonrepresentational activities. Everyone agrees that the union may not use plaintiffs' money for those purposes.
 
 
 40
 And it doesn't. All of the agency fees collected from nonmember employees are put into an independently controlled escrow. If a nonmember wishes to retain amounts earmarked for nonrepresentational purposes, he need only advise the union in writing by November 15. By early December, the union pays out the $24 already collected, together with an up-front rebate of the $56 that will be collected over the next seven months, provided the employee accepts the union's apportionment. An employee who challenges the apportionment can force the union to arbitrate the matter. The arbitration takes place in January and the objecting employee's account is settled before April 30. By that time the objector will have contributed $56 into escrow, which he gets back with interest, along with $24 up front to cover the remaining three months of the school year. In either case, the objector makes a small profit.[1]
 
 
 41
 Precedent joins common sense. The Supreme Court in Chicago Teachers Union, Local No. 1 v. Hudson, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986), listed three--and only three--requirements a union must meet in a situation such as this. First, none of the money collected from the objectors may be used--even temporarily--for nonrepresentational purposes. Id. at 305, 106 S.Ct. at 1075. Citing Abood v. Detroit Board of Education, 431 U.S. 209, 234 n. 31, 97 S.Ct. 1782, 1799 n. 31, 52 L.Ed.2d 261 (1977), the Court decried the "tyrannical character of forcing an individual to contribute even 'three pence' for the 'propagation of opinions which he disbelieves.' " 475 U.S. at 305, 106 S.Ct. at 1075. Here, the union uses not a penny for nonrepresentational activities, as 100% of the agency fee is safely tucked away in escrow. Thus, objecting employees do not suffer the injustice of having their money used to advance causes they abhor.[2]
 
 
 42
 The only other first amendment harm plaintiffs suggest is that the $8 a month is not available to them for three (or seven) months, so they are unable to use the money to exercise their first amendment rights. Appellant's brief at 25-26. If this argument were accepted, every suit for money against a party acting under color of government authority would automatically become a first amendment case. In any event, it is a type of harm that the Court in Hudson did not recognize.[3]
 
 
 43
 Second, Hudson requires that the union provide objecting employees with "sufficient information to gauge the propriety of the union's fee." Id. 475 U.S. at 306, 106 S.Ct. at 1075. The union does this, as the district court found and the plaintiffs seem to concede. Maj. op. at 1225 n. 2.
 
 
 44
 Hudson 's third requirement is that an impartial arbitrator be available to make a prompt decision as to what portion of the fees are used for nonrepresentational purposes. Id. at 307, 106 S.Ct. at 1076. Plaintiffs make no claim about the timing or adequacy of the arbitration procedure.
 
 
 45
 Unlike the majority here and the Sixth Circuit in Tierney v. City of Toledo, 824 F.2d 1497 (6th Cir.1987), I see nothing in Hudson that prevents the union from temporarily withholding that portion of the agency fees that is to be used for nonrepresentational purposes. The Court's concern in Hudson about use of the money for prohibited purposes is not relevant here; no legitimate first amendment interest is violated by the temporary collection of the money. Any due process concern is satisfied by the fact that there is an accounting, the opportunity to have the matter resolved by an impartial arbitrator, and the payment of interest (or its equivalent, an advance rebate) to make up for any lost use of the funds. I might be more concerned if the amounts in question were larger, if they threatened to deny plaintiffs and their families food and shelter. See Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). But we're talking about $8 a month for three or, at most, seven months, an amount unlikely to break the family budget.
 
 
 46
 Nor does Hudson call into question the union's method of notification, as Hudson's discussion of notice goes entirely to completeness and accuracy. Nothing would be gained by giving nonmembers the information before any deductions are made. The relevant event is not the commencement of the deductions but the deadline for requesting a refund or review by an impartial arbitrator. Notice, after all, must have a purpose. The purpose here is to allow nonmembers to make a meaningful decision in exercising their right to object. So long as the union provides adequate information well in advance of the time when nonmembers must raise their objections, the purpose of notice is amply served.II
 
 
 47
 Plaintiffs find themselves in an uncomfortable situation: They are represented by a union they do not support and to which they are, nevertheless, forced to contribute. They obviously resent this and bristle at being deprived, even temporarily, of a portion of their income. These are legitimate concerns, but the union has legitimate interests as well. Under applicable law, the union is the bargaining unit's lawful representative, and it is entitled--indeed required--to collect from everyone in the unit a pro rata share of the funds it expends on representational activities, and to do so in an orderly and cost-efficient manner.
 
 
 48
 Ideally, of course, the union would collect from nonmembers only that portion of the agency fee dedicated to representational purposes. But that is not so easy to accomplish in practice. Here, the union has advanced a legitimate, neutral reason for the procedure it has adopted: It is impossible or, at any rate, very difficult, to identify the objectors during summer vacation, when the names and addresses of all the teachers are not yet known.[4] In light of this constraint, the union has come up with a procedure that accommodates the legitimate interests of the minority, while preserving the union's right to collect agency fees without undue administrative costs. Tyranny of the majority this simply is not.
 
 
 49
 I do see, however, a different kind of tyranny in this case--the tyranny of the modern lawsuit. In a dispute over interests that are, in my judgment, adequately served and in any event minuscule, the plaintiffs have managed to impose on the defendants very substantial litigation costs. Win, lose or draw, the union will have spent a substantial chunk of the funds collected and earmarked for representation. Moreover, the majority's ruling will impose on the union a burden vastly out of proportion to any benefits plaintiffs may gain by getting their $8 a month starting in September rather than December.[5]
 
 
 50
 We do the judicial system, and the society it serves, serious harm when we countenance such bagatelle litigation. Life in modern society is complicated and not every dissatisfaction should find a remedy in court. See Oki America, Inc. v. Microtech Int'l, Inc., 872 F.2d 312, 315 (9th Cir.1989) (Kozinski, J., concurring). If plaintiffs are unhappy with the union, they have every right to vote against it, persuade others to do the same, or lobby the legislature for repeal of laws that force them to contribute to a union to which they do not belong and which they obviously resent. But using litigation to pursue such political objectives by making life difficult for the union is not appropriate. We have a responsibility to avoid encouraging such lawsuits, which are not only costly to the parties involved but divert scarce judicial resources from more pressing and significant issues. Four circuits have held that lawsuits such as this one have no merit; we make a serious error--prudentially as well as legally--by refusing to follow suit.
 
 
 
 [1]
 The description that follows is of the procedure in effect for the 1987-88 school year. [Stipulation, Ex. 9] Plaintiffs' lawsuit dealt with the 1986-87 year as well as 1987-88, but the parties agreed that for purposes of determining whether a permanent injunction should be entered, the relevant procedure to be considered was that for 1987-88. [RT 62, page 15] No issue is presented on appeal regarding the 1986-87 procedure, other than whether the district court was correct in treating the filing of the lawsuit as a proper substitute for the filing of objections under the SBTA's procedure
 
 
 [2]
 The district court specifically found that the information provided in the notice is adequate [CR 10, p. 2 ER], and plaintiffs do not contend otherwise
 
 
 [3]
 The court did order the SBTA to include language in its procedural notice that said the union bears the burden of proof on the issue of what percentage of fees is chargeable to collective bargaining. This part of the court's judgment was not contested
 
 
 [4]
 The District also seeks enforcement of an indemnity agreement between SBTA and the District. The District did not cross-claim against the SBTA for indemnity below. Generally, we will not consider issues raised for the first time on appeal. In re Wind Power Systems, Inc., 841 F.2d 288, 290 n. 1 (9th Cir.1988). Therefore, we will not address the merits of the District's arguments regarding the indemnity agreement
 
 
 [5]
 Plaintiffs argue that their case also implicates the fourteenth amendment and due process. The Supreme Court, however, analyzes agency fee procedures in terms of the first amendment. Hudson, 475 U.S. at 304 n. 13, 106 S.Ct. at 1074 n. 13. "We are convinced that ... the procedures required by the First Amendment also provide the protections necessary for any deprivation of property." Id
 
 
 [6]
 The circuits that have disagreed with Tierney and permitted 100% escrow of fees have done so largely in reliance on Hudson's language which holds that among the "constitutional requirements for the Union's collection of agency fees" is "an escrow for the amounts reasonably in dispute while such challenges are pending." Hudson, 475 U.S. at 310, 106 S.Ct. at 1077. This was never meant to imply either that 100% of fees could be escrowed absent adequate procedural safeguards or that funds clearly marked for use on representational activities are required to be escrowed. Instead, the Hudson court's language merely indicates that any amount "reasonably in dispute," i.e., that portion of an agency fee which is neither clearly to be used for representational purposes nor for prohibited ideological activities, must be placed in escrow. See id. at 309-10, 106 S.Ct. at 1077
 
 
 [7]
 The dissent contends that the disputed dues only amount to eight dollars per month and therefore the entire dispute does not belong in the courts. The money at stake in Hudson was seventeen dollars a month. Denying teachers here an opportunity to challenge the union's actions in court simply because their claim involves nine dollars less than the Hudson teachers' would improperly place a pricetag on constitutional rights. The Hudson court specifically decried such an approach, stating that "[t]he amount at stake for each individual [should] not diminish ..." any constitutional concerns. 475 U.S. at 305, 106 S.Ct. at 1075
 Nor should the teachers be denied their day in court because their claims arise from their political differences with the union, as the dissent also contends. The teachers' claims may have political undertones, but this is true of many first amendment claims which the courts continually hear.
 
 
 *
 I join part II of the majority opinion, which holds that the teachers' filing of the complaint provided sufficient notice of their objection to the collection of fees
 
 
 [1]
 Assuming an interest rate of 10%, a non-arbitrating employee would lose about 20cents of interest on the $24 held in escrow for the first three months. Because of the advance rebate, however, he would get the $56 before he would have earned it as salary. At the same interest rate, the rebate would be worth about $1.80 in advance interest, for a cool $1.60 of profit
 The employee who goes to arbitration still makes a profit, albeit a less munificent one. Assuming the arbitrator upholds the union's calculations, the employee would receive $56 with interest, which would compensate him for the lost use of the money. He would, however, get an up-front rebate of $24, which would be worth about 20cents in advance interest. Not exactly a killing, but better than nothing.
 
 
 [2]
 In fact, the union goes well beyond what the Supreme Court requires; under Hudson, the union need not give up control over the entire agency fee, only the portion that might reasonably be questioned by an objecting employee. 475 U.S. at 310, 106 S.Ct. at 1077. By putting the entire agency fee into escrow, the union eliminates any quibble about what amount might be deemed reasonably subject to question
 
 
 [3]
 Surprisingly, this theory is not without support in the case law. The Sixth Circuit embraced such a claim in Damiano v. Matish, 830 F.2d 1363, 1370 (6th Cir.1987), and even one pre-Hudson Ninth Circuit case seems to have casually mentioned the unavailability of funds as a factor in establishing first amendment harm. Seay v. McDonnell Douglas Corp., 427 F.2d 996, 1004 (9th Cir.1970). For the reasons explained in text, we should decline to follow the ill-advised ruling of the Sixth Circuit. And, in the two decades that it has been on the books, the Seay dictum has never been followed; any precedential effect it may have had has surely been dissipated by the Supreme Court's intervening ruling in Hudson
 
 
 [4]
 The burdens and difficulties imposed on the union by alternate procedures are detailed in the stipulation of the parties below:
 In developing its agency fee rebate procedure, CTA considered sending fee payers the Hudson notice before any deductions took place, rather than immediately following the first deduction as is provided in CTA's rebate procedure. However to send the notices before deduction was considered basically unworkable, given the school year nature of employment of the teachers that CTA locals represent. In schools, virtually all teachers are employed for the entire school year and virtually all new employees begin work at the same time--the start of the school year around September 1. If notices were sent prior to the start of the school year several problems would result. Many notices would go to the wrong address since approximately 8% of teachers change addresses each summer and the notices are sent, if possible, to their home addresses. Changed addresses for teachers are typically not available from the districts until the end of the first month of school. In addition, teachers for whom CTA has only a school addresses would not receive a notice. Many unnecessary notices would be sent at great expense to teachers who had retired or changed school districts. Finally, new teachers are typically given 30 days to decide whether to join the union or become a fee payer. Consequently, these teachers could not receive a notice prior to the first deduction (September 30) unless the date of the first deduction were postponed. If postponed, new teachers would have a different pro-rated agency fee deducted than continuing teacher/fee payers, a result with other problems (see below).
 In developing the procedure CTA also considered having objecting fee payers pay a reduced fee consistent with CTA's estimate of chargeable expenditures. This procedure was not adopted for several reasons. CTA had used a reduced fee system in the past but experienced problems because several school districts had refused to deduct a different amount for agency fees than for member dues. Moreover, use of a reduced fee would require that Hudson notices be sent at least 30 days prior to the first deduction so the identities of the objecting fee payers could be determined. This was considered unworkable as discussed above. The only other option is to send the notices on October 15 when identities of the year's fee payers and their addresses are known, and to delay collection of the fee until the end of December when the identities of objectors who would be entitled to a reduced fee are known. This would deprive CTA, NEA and affiliated locals of any agency fees for four months each year. In addition, if collection is delayed for four months, fee payers would then have to pay a much larger amount each month in fees for the rest of the school year than members pay in dues in order to recoup amounts owed for the four months when deductions did not take place. All fee deductions in school districts are normally divided over a ten month period. CTA was concerned that this unequal deduction might raise equal protection claims. Accordingly, after careful consideration, the current system was adopted.
 Stipulation at 16-18 (filed Sept. 19, 1988) (emphasis in original).
 
 
 [5]
 The majority suggests that focusing on the small amounts in issue would "improperly place a pricetag on constitutional rights." Maj. op. at 1228 n. 7. Not so. My point is that there is no constitutional right at stake here at all, so the only thing in issue is the precise timing when plaintiffs are to receive a little bit of money